## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KATHRYN L. THOMPSON,     :

          **Plaintiff**    :    **CIVIL ACTION NO. 1:04-0798**

    **v.**     :    **(CALDWELL, D.J.)**
                        **(MANNION, M.J.)**
JO ANNE B. BARNHART,    :
**Commissioner of Social**
**Security,**           :

     **Defendant**    :

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Supplemental Security Income, ("SSI"), under Title XVI of the Social Security Act, ("Act"). 42 U.S.C. §§ 1381-1383f.

Based upon a review of the record, it is recommended that the plaintiff's appeal from the decision of the Commissioner of Social Security, (Doc. No. 1), be **DENIED.**

## I. Procedural Background

The plaintiff filed her application for SSI benefits on April 10, 2002, in which she alleged disability since December 12, 2001 due to breathing

problems, sleep apnea, migraines, GERD[1], sinusitis, thyroid disease, depression and deep vein thrombosis.  (TR. 23-24).

After her claim was denied (TR. 95-99), the plaintiff's application eventually came on for hearing before an administrative law judge, ("ALJ"), on May 7, 2003.  (TR. 38-92).  The plaintiff was represented at her hearing before the ALJ by different counsel than is representing her in this appeal.

On July 29, 2003, the ALJ issued a decision in which she found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability; that the plaintiff had an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 416.920(b); and, that those medically determinable impairments did not meet or medically equal any of the listed impairments in Appendix I, Subpart P, Regulation No. 4.  The ALJ also found that the plaintiff's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the decision; that the ALJ had carefully considered all of the medical opinions in the record regarding the severity of the plaintiff's impairments (20 C.F.R. § 416.927) and found that the plaintiff had the residual functional capacity[2] ("RFC") to lift ten pounds occasionally

---

[1]Gastroesophageal reflux disease. TABER'S CYCLOPEDIC MEDICAL DICTIONARY at 832 (19th ed. 2001).

[2]Your residual functional capacity.  (a) General.  Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual

and five pounds frequently.  She was able to stand for two out of eight hours and she had no sitting limitations. The plaintiff could not walk long distances or stairs and required a reasonably clean air environment.   The ALJ determined that the plaintiff had the RFC for a range of sedentary work[3]; that she was unable to perform any of her past relevant work (20 C.F.R. § 416.965); that the plaintiff was a "younger individual" (20 C.F.R. § 416.963); that the plaintiff had a "high school (or high school equivalent) education" (20 C.F.R. § 416.964); that the plaintiff had no transferable skills from any past relevant work and transferability of skills was not an issue in this case (20 C.F.R. § 416.968).  Although the plaintiff's exertional limitations did not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.21 as a framework for decision-making, there were a significant number of jobs in the national economy (regional economy of Northeastern Pennsylvania) that she could perform. Examples of such jobs include work as video monitor (200 jobs), telephone receptionist (400-500 jobs) and telephone solicitor (300-400 jobs); the plaintiff was not under a "disability," as defined in

---

functional capacity is what you can still do despite your limitations.  20 C.F.R. § 404.1545(a).

[3]Sedentary work involves lifting no more than 10 pounds at a time and occasionally carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R § 404.1567(a).

3

the Social Security Act, at any time through the date of this decision (20 C.F.R. § 416.920(f)).  (TR. 30-31).

Plaintiff filed a request for review of the ALJ's decision. (TR. 12).  On February 5, 2004, the Appeals Council concluded that there was no basis upon which to grant her request for review. (TR. 6-8). Thus, the ALJ's decision stood as the final decision of the Commissioner.

Currently pending before the Court is the plaintiff's appeal of the decision of the Commissioner of Social Security filed on April 12, 2004.  (Doc. No. 1).

## II. Disability Determination Process

A five step process is required to determine if an applicant is disabled for purposes of social security disability insurance.  The Commissioner must sequentially determine:  (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work; and (5) whether the applicant's impairment prevents the applicant from doing any other work.  See 20 CFR § 416.920 (2000).

The instant action was ultimately decided at the fifth step of the process when the ALJ determined that considering the plaintiff's age, educational background, work experience, and residual functional capacity, she is capable

4

of making a successful adjustment to work that exists in significant numbers in the national economy.   (TR. 29).

## III.  Evidence of Record

The plaintiff was born on February 21, 1958  and was forty-five (45) years old at the time of the ALJ's decision.  (TR. 28, 43,111).  Her past work experience includes employment as a stock clerk and deli clerk.  (TR. 24).  The plaintiff has a high school education.  (TR. 24).

The medical evidence of record establishes that the plaintiff had a significant earlier history of chronic obstructive pulmonary disease ("COPD"), with multiple hospitalizations between 1997 and 1999, as reported by Dr. Ihab Dana, M.D., the plaintiff's primary treating physician.  (TR. 292).  The plaintiff was hospitalized for a hysterectomy and respiratory obstruction that was treated by a tracheotomy in May of 2000.  (TR.164).  The tracheotomy was later reversed.  (TR.179).

In June, 2001, the plaintiff underwent a heart catheterization based on complaints of shortness of breath and chest pain.  The report shows a thickened but mobile aortic valve with a trace of mitral regurgitation.  The left ventricle had minor abnormalities with normal function, with the ejection fraction estimated to be between 50 to 55 percent.  (TR.184).  The left atrium and right heart were normal and there were no pericardial abnormalities.  Id. In May, 2001, and October, 2001, Dr. Dana evaluated the plaintiff in

5

preparation for two surgeries, a hernia surgery and gallbladder surgery. (TR.188-90).  He mentioned a lengthy past surgical history, past history of COPD and deep vein thrombosis with no current problems in those two area other than occasional shortness of breath, a history of Grave's disease with current exopthalmos[4]. (TR.190-91). On September 28, 2001, Dr. Dana completed a welfare related medical assessment form describing the plaintiff as permanently disabled based on COPD and deep vein thrombosis.  (TR. 186-87). However, a pulmonary function test showed mild breathing problems and testing was negative for deep vein thrombosis.  Mild sinusitis was shown as well as gastritis.  (TR. 192, 209, 213, 228-32).

In August of 2002, Dr. Dana performed a consultative examination of the plaintiff for the state agency.  (TR. 292-97).  He wrote that the plaintiff had COPD, but continued to smoke.  (TR. 294).  He also recited a history of thyroid problems, Grave's disease, migraine headaches, arthritis, anxiety, depression and hypertension.  (TR. 294-95).  The plaintiff had denied any recent chest pain but did mention shortness of breath and arthritic aches and pains with generalized weakness and exopthlmos from Grave's disease. (TR. 294).  Her sleep apnea had improved and there is no mention of migraine headaches requiring medication.  (TR. 293).  Dr. Dana noted that she had

---

[4]Abnormal protrusion of the eyeball.  This may be due to thyrotoxicosis, tumor of the orbit, orbital cellulitis, leukemia, or aneurysm. TABER'S CYCLOPEDIC MEDICAL DICTIONARY at 726 (19th ed. 2001).

shortness of breath especially when walking and some difficulty concentrating on and answering questions.

The following month the plaintiff was hospitalized for two days because of a COPD exacerbation.  (TR. 323-25).  However, the actual findings show decreased breath sounds with wheezing and temporary atrial fibrillation.  Id. The discharge diagnosis was exacerbation of COPD and bronchitis.  (TR. 325).

Continuing office notes from Dr. Dana for the time period after the September 2002 hospitalization continue to show alternating findings of clear lungs versus findings of scattered rhonci and wheezing at other times.  (TR. 336-48).  There is no explanation in the record for that variation, and a February 19, 2002 pulmonary function test shows possible early obstructive pulmonary disease with normal FVC and FEV1 readings.  The specific findings suggested mild small airway disease or emphysema.  (TR. 358). That same month, the plaintiff sought evaluation for surgery to improve chronic sinusitis.  (TR. 36-69).  She reported taking a number of inhalers and medications for her breathing, using a C-Pap machine[5] and medication for thyroid, GERD, sleep and pain.  Id.

An unsigned assessment from Dr. Dana describes the plaintiff as having multiple breathing problems, frequent attacks and being incapable of work.

_____

[5]Continuous positive airway pressure.  TABER'S CYCLOPEDIC MEDICAL DICTIONARY at 478 (19th ed. 2001).

(TR. 370-79).  However, she continues to smoke and, by her own statement, her shortness of breath is relieved by stopping to breathe.

## IV.  Discussion

In support of her appeal, the plaintiff presents several arguments. Plaintiff first argues that the ALJ failed to assign controlling weight to the opinion of the primary treating physician.  Second, the plaintiff states that the ALJ's conclusion as to employability is not supported by substantial evidence. Finally, plaintiff argues that her occupational base is so narrowed that a finding of disability should follow.

### A.  *WHETHER THE ALJ AWARDED AN IMPROPER AMOUNT OF WEIGHT TO THE OPINION OF THE PLAINTIFF'S TREATING PHYSICIAN.*

The plaintiff argues that on the basis of the plaintiff's treatment history and medical test results, Dr. Dana, the plaintiff's treating physician, opined that the plaintiff's impairments resulted in significant functional limitations. The plaintiff alleges that the ALJ failed to point to contradictory medical evidence to challenge Dr. Dana's conclusions, but simply reached her own conclusions regarding the plaintiff's limitations.  The defendant maintains that Dr. Dana's opinion is not entitled to controlling weight under the regulations for several reasons.  The defendant asserts that Dr. Dana's clinical findings do not support his opinions and that his opinions conflict with the other

evidence of record.

The ALJ is required to evaluate every medical opinion received.  20 C.F.R. § 404.1527(d).  Although he must consider all medical opinions, the better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings, the more weight the ALJ will give that opinion.  20 C.F.R. § 404.1527 (d).  Automatic adoption of the opinion of the treating physician is not required.  See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).

In order to be entitled to controlling weight, a treating physician's opinion must be "well supported by medically acceptable clinical and laboratory diagnostic techniques" and must not be "inconsistent with the other substantial evidence" in the record.  20 C.F.R. §404.1527(d)(2).

In Jones v. Sullivan, 954 F.2d 125 (3d Cir. 1991), the court held that, in the absence of contradictory medical evidence, an administrative law judge must accept the medical judgement of a treating physician.  However, the court also noted that these opinions need not be accepted where they are conclusory and unsupported by the medical evidence or where the opinions are contradicted by the opinions of other physicians, including state agency physicians, who reviewed the findings of the treating physicians and concluded that these findings do not reveal a condition that would preclude gainful employment.

In Williams v. Sullivan, 970 F.2d 1178 (3d Cir. 1992), the court noted

9

that while the administrative law judge may not base a decision upon his own interpretations of the significance of medical data, this does not prevent the administrative law judge from weighing medical reports against an internal contradiction and other contradictory medical evidence.

The ALJ noted that on September 28, 2001, Dr. Dana completed a welfare related medical assessment form describing the plaintiff as permanently disabled based on COPD and deep vein thrombosis. (TR.186-87). However, the medical reports from Dr. Dana's practice, Endless Mountain Health Systems, contradict the validity of this assessment because a pulmonary function test showed only mild breathing problems and testing was negative for deep vein thrombosis. (TR.192, 209, 213, 228-32). Furthermore, from June, 2001 through September, 2001, Dr. Dana reported plaintiff's lungs sounded clear and plaintiff did not report shortness of breath. (TR. 245-55). Office notes from Endless Mountain Health Systems for the time period beginning in June of 2001 through early 2002 mention the COPD history, but the ALJ noted that the actual findings alternate between notations of "clear lungs" to occasional notations of rhonci and mild wheezing. (TR. 233-40). In December, 2001, the plaintiff consulted Dr. Dana for complaints of jaw pain. Dr. Dana indicated that he believed the plaintiff had a tooth abscess and he found no signs of lung problems in his examination. (TR. 290).

No evidence supports Dr. Dana's opinion that deep vein thrombosis was

a disabling condition.  (TR. 186-87).  On the contrary, the only medical evidence in the record pertaining to this condition consists of two radiology reports which showed no deep vein thrombosis in her legs.  (TR. 213, 215). Dr. Dana consistently reported that the plaintiff's extremities looked normal and he never diagnosed deep vein thrombosis during the relevant time period. Although the plaintiff was treated for that problem in the past, Dr. Dana's office noted make no mention of the condition during the relevant time period.  (TR. 233-91, 336-47).

In October, 2002, the plaintiff consulted Dr. Thomas M. Roe, a cardiologist, describing episodes of pain with effort and progressive breathing problems.  (TR. 326-35).  She informed Dr. Roe that stopping to catch her breath would alleviate symptoms and there were no symptoms while she rested.  (TR. 326).  In November, 2002, a heart catheterization showed that the plaintiff had normal systemic pressure, some left ventricular dysfunction and normal coronary arteries.  (TR. 353).

Additionally, Dr. Wander, a state agency physician, concluded that the plaintiff maintained the RFC to work at a light exertional level.  (TR. 298-305). He also opined that the plaintiff did not have a severe mental impairment and that her daily activities and social functioning were not limited by any mental impairment.  Id.  State agency physicians are considered highly qualified experts in Social Security Disability evaluation.  20 C.F.R. § 416.927(f)(2)(I); see also Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991) (stating that the

11

ALJ may reject the opinion of a treating physician based upon contradictory opinions of state agency physicians).  Accordingly, the ALJ did not err in according probative weight to Dr. Wander's opinion,  stating, "I agree that the record does not document any severe mental impairment and that [plaintiff's] daily activities and social functioning are not limited by any mental impairment."  (TR. 28).

Dr. Dana's opinions were not supported by his own findings or other objective evidence in the record.  Therefore, the ALJ properly held that his opinions were not entitled to controlling weight.

**B.**   ***WHETHER THE ALJ PROPERLY CREDITED ALL OF PLAINTIFF'S LIMITATIONS WHICH WERE SUPPORTED BY THE RECORD.***

Next, the plaintiff argues that the ALJ improperly disregarded testimony of the vocational expert ("VE") who opined that the use of a breathing machine could interfere with plaintiff's ability to work.  (Doc. 8, p.11-12).  The defendant maintains that this argument fails because the ALJ was not required to credit the VE's testimony in response to a hypothetical question based only upon plaintiff's subjective complaints.

Treatment notes from October 8, 2002, indicate that Dr. Dana prescribed a home nebulizer treatment machine.  (TR. 33-40).  However, he made no mention of how often the plaintiff was required to use it.  In fact, no

evidence exists, other than the plaintiff's own testimony, that the plaintiff was required to use the machine every four hours.  In fact, in her brief, the plaintiff cited to no evidence that supports the plaintiff's claims regarding frequency of treatment or how long it takes to administer each treatment.  (Doc. 8, p.11).

The ALJ was not required to accept the VE's testimony based only on the plaintiff's subjective complaints.  Craigie v. Bowen, 835 F.2d 56, 57-8 (3d. Cir. 1987) (stating that "inasmuch as the [ALJ] did not have to accept [plaintiff's] testimony, he did not have to accept the expert testimony that was predicated on it").  Therefore, given the complete absence of evidentiary support for plaintiff's claim, the ALJ properly disregarded the VE's testimony that a breathing treatment might interfere with plaintiff's work schedule.

Additionally, we find that the ALJ considered all of the plaintiff's credible limitations that were supported by the record in the hypothetical posed to the VE.  (TR. 29, 85-6).  The Third Circuit has held, with respect to hypothetical questions posed to vocational experts, that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).  A hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  In

Burns v. Barnhart, the Third Circuit state that "[w]here there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." 312 F.3d 113, 123 (3d Cir. 2002).  When an ALJ's hypothetical question to the vocational expert sets forth the plaintiff's limitations as supported by the record, the vocational expert's testimony may be accepted as substantial evidence in support of the ALJ's determination that the plaintiff is not disabled.  Chrupcala, 829 F.2d at 1276.

During the questioning of the VE, the ALJ gave credence to the plaintiff's testimony by specifically noting that she could undergo nebulizer treatments in the morning, during her lunch break, and after work.  (TR. 86). The ALJ then accommodated her respiratory problems by limiting the plaintiff to restricted, sedentary work in a clean air environment.  (TR. 29, 85-6).  The ALJ's RFC assessment is more conservative than the state agency physician's and adopts many of the limitations imposed by Dr. Dana.  (TR. 298-305, 373-74).   We find that the ALJ considered all of the plaintiff's limitations that were supported by the record and properly disregarded the VE's testimony that a breathing machine might interfere with the plaintiff's work schedule.

**C.** ***WHETHER THE ALJ PROPERLY IDENTIFIED A SIGNIFICANT NUMBER OF JOBS WHICH THE PLAINTIFF COULD PERFORM.***

Plaintiff's final argument is that a finding of disability is warranted due to the narrowing of plaintiff's occupational base.  (Doc. 8, pp.12-13).  The Act and Regulations do not define what constitutes a "significant" number of jobs. Such a determination "must be made on a case by case basis and ultimately must be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation."  Hall v. Bowen, 837 F.2d 272, 274-76 (6th Cir. 1988).  In this case, the VE testified that the hypothetical individual described by the ALJ could make an occupational adjustment to work as a video monitor, telephone receptionist and telephone solicitor, which collectively represent approximately 1000 jobs in the regional economy. (TR. 30). Based on this testimony, the ALJ concluded that the plaintiff could perform a significant number of jobs in Northeastern Pennsylvania. (TR. 30).  In Craigie, the Court stated that 200 jobs is a clear indication that other substantial work which claimant could perform existed in the national economy.  835 F.2d at 58.  Similarly, in Hall the Court held that finding 1350 jobs in the local economy established the existence of work in significant numbers.  837 F.2d at 275.  Additionally, the plaintiff does not

15

suggest that the jobs identified by the VE are either isolated or exist in limited numbers in very few locations outside of the area she resides.  <u>See</u> 20 C.F.R. § 416.966(b).

In her brief, plaintiff eliminates two jobs identified by the VE, telephone receptionist and telephone solicitor.  The only basis for dismissal of these jobs is the plaintiff's own testimony that she experiences shortness of breath when she talks on the phone.  However, as discussed above, such a significant respiratory problem is not supported by the record.  However, even if the plaintiff could only work as a video monitor, her occupational base would not be narrowed because that position alone comprises 200 positions in the regional economy.  (TR. 87).  <u>See</u> 20 C.F.R. § 406.966(b) (stating that one occupation can be sufficient if it represents a significant number of jobs).

Accordingly, the plaintiff's occupational base was not so eroded that a finding of disability is warranted.  Furthermore, substantial evidence supports the ALJ's finding that there exists a significant number of jobs in the economy which plaintiff could perform.

16

**V. Conclusion**

Based upon the evidence of record, it is recommended that the plaintiff's

appeal of the decision of the Commissioner of Social Security (Doc. No. 1) be

**DENIED.**


**s/ Malachy E. Mannion**
**MALACHY E. MANNION**
**United States Magistrate Judge**


**Dated:    March 8, 2005**
O:\shared\REPORTS\2004 Reports\04-0798.wpd

17